Good afternoon, and may it please the Court. I am Joseph Brooks from the FDIC Legal Division. This is an appeal from an extraordinary and unprecedented preliminary injunction that bars the FDIC from continuing an ongoing enforcement proceeding in any way. The appeal presents four issues. First, whether the District Court had subject matter jurisdiction. Second, whether Burgess has a right to a jury trial. Third, whether the compensable harm requirement for an improper removal claim applies when a claimant seeks only prospective relief. And finally, whether the District Court erred in ruling that the irreparable harm requirement for a preliminary injunction was automatically satisfied. I want to focus on the first two issues beginning with subject matter jurisdiction. After the pre-stay briefing was fully completed in this case, the Southern District of Texas decided Motes v. NCUA and effectively created an intracircuit split on the subject matter issue before this Court, and I'd like to begin explaining why the Southern District of Texas got it right in Motes and the Northern District of Texas got it wrong here. The explanation is really quite simple. The District Court in this case erroneously grounded its subject matter jurisdiction analysis on Webster v. Doe and its clear statement rule. But as the Supreme Court clarified in Elgin v. Department of the Treasury, Webster's clear statement rule applies only when a statute purports to provide no judicial review of constitutional claims. And as Elgin further made clear, whereas here the statute provides for review in the Court of Appeals after a final agency determination, Webster's clear statement rule does not apply. The rule that does apply to explicit jurisdiction stripping in an instance such as this is the one stated in Bank of Louisiana. This Court determines whether there is subject matter jurisdiction, quote, simply by interpreting the words Congress has chosen, or as the Supreme Court put it in the Axon decision, the object is to determine whether Congress has, quote, provided in so many words that district court jurisdiction will yield. Well, here Congress clearly did. Section 1818I, the operative statute here, provides, quote, no court shall have jurisdiction to effect by injunction or otherwise the issuance or enforcement of any notice or order under Section 1818, close quote. And that's clearly what the district court's injunction does here. Simply stated, the Northern District of Texas in this case asked the wrong question whether Section 1818I satisfies the clear statement rule and got the wrong answer. Importantly, this also demonstrates the proper way to harmonize some of the other decisions that have been relied upon here by Mr. Burgess. The Collins case, a recent case by this Court, the Cushata case, which Collins relied on and the Ellison case are all cases involving statutes that purported to provide no judicial review of constitutional claims. So they don't apply here and they are entirely consistent because they don't apply here with this Court's decision in Bank of Louisiana and its decision in Cochran. It's also worth noting quickly at this point that outside of the circuit, three district courts that have decided this precise issue involving the FDIC have all held that Section 1818I precludes subject matter jurisdiction over structural constitutional claims. And perhaps even more persuasively, in his acts on concurrence, Justice Gorsuch pointed to Section 1818I as an example of a statute that explicitly precludes jurisdiction over structural constitutional claims. Finally, on subject matter jurisdiction, icing the cake, this Court's Cochran en banc decision interpreted the earlier panel decision in Bank of Louisiana as, quote, holding that the district court lacked jurisdiction over a separation of powers challenge to an administrative proceeding before the FDIC, unquote, and that Bank of Louisiana also held, according to the en banc Cochran decision, that jurisdiction, quote, was explicitly precluded by Section 1818I. Thus, whatever unclarity there arguably might have been about what Bank of Louisiana held before the en banc decision in Cochran, from that point forward, Bank of Louisiana held with this Court sitting en banc, said it held. And as such, Bank of Louisiana is on all fours with this case, and it dictates the conclusion that there is no subject matter jurisdiction here. Unless the Court has questions with respect to the subject matter jurisdiction issue, I am happy to entertain, I'll move on to the jury trial issue. You can proceed.  Now, assuming, for the sake of argument, that there were subject matter jurisdiction here, on the jury trial issue, we have a rather similar situation. This Court's prior decision in Aiken v. OTS controls, and when I say prior decision, Aiken was decided prior to the Supreme Court's recent Jarkissi v. SEC decision. In Aiken, relying solely on the Supreme Court's decision in Grand Financiera, this Court held there was no right to a jury trial of Section 1818 claims because they fall within the public rights doctrine. And importantly, that decision was adopted and followed by the Second Circuit in the Supreme Court. Even more importantly, in Jarkissi, the Supreme Court plowed no new ground. As a matter of fact, the Court said, quote, Grand Financiera effectively decides this case. In other words, both this Court's decision in Aiken and the Supreme Court's decision in Jarkissi are grounded on the very same prior Supreme Court precedent. And in a recent decision, I think it was January or February of this year of this Court, Texas v. United States, this Court reaffirmed that, quote, for a Supreme Court decision to change this Circuit's law, it must unequivocally overrule prior precedent, unquote. And given that binding precedent of this Court, as the Court said there, and I'm paraphrasing, Jarkissi, quote, can hardly be read to unequivocally overrule prior precedent, unquote, when, quote, the holding in Grand Financiera was explicitly preserved combined with the longstanding judicial status, quote. So our primary point on the jury trial issue is that this Court has already resolved it and that the intervening Jarkissi decision did not unequivocally overrule it. And it's perhaps worth noting that in the briefs in this case, Mr. Burgess has never taken the position, certainly not stating the relevant standard, that Jarkissi unequivocally overruled Aiken. And again, given that this Court and Aiken relied solely on the analysis of the public rights doctrine in Grand Financiera, which again, the Supreme Court said controlled the result in Jarkissi, it could hardly be said that Aiken has been overruled. Assuming though, just for the sake of argument, that Aiken were not the controlling precedent here, Jarkissi would still not require a jury trial in this matter. As Mr. Burgess has necessarily conceded, and I'm quoting from his supplemental brief, the Supreme Court left open the possibility of identifying new categories of public rights in Jarkissi. However, there are a number of critical ways in which Jarkissi is distinguishable from this case, and not only do they show the cases are distinguishable, but these points will show that Jarkissi also supports the conclusion that there is no jury trial available here. We have a jury conclusion issue here. I have other circuits address this. In the context of the way that the issue was framed in this Court, Your Honor, which is whether or not there is a distinction under Section 1818I or similar statutes between constitutional claims generally on the one hand and structural or separation of powers claims on the other hand, no other circuit has spoken to that issue to my knowledge. The courts that have spoken to that issue are this Court in Bank of Louisiana and Interpreting Bank of Louisiana in Cochran, and the four district court decisions that we rely on which are out of the District of Kansas, that's the CBW Bank case, Bonnen, Eastern District of Missouri, and Ponte, District of Rhode Island. In other words, every court that has ever looked at it has concluded that Section 1818I forecloses district court jurisdiction over separation of powers or structural claims because those claims will get all necessary review at the Court of Appeals level following the agency determination. Now with respect to what JARCSI has to say and why we believe that even in the absence of Aiken and the rule of orderliness, there would be no right to a jury trial here. The reason why Supreme Court held there was a right to a jury trial in JARCSI is because the SEC had not identified there a distinctive area involving governmental prerogative, and it's important for the Court to focus here so we don't get distracted. There are two elements to what you must have to fall within the public rights doctrine. Yes, you must have governmental prerogatives, but you must also have a distinctive area that falls within those prerogatives. The Supreme Court said it was not in SEC v. JARCSI. Here we've identified two. We've identified the governmental prerogative of safeguarding public funds, and nobody can dispute that the federal government has a prerogative to safeguard its own funds. And the distinctive area here is public funds and the deposit insurance fund, which is backed up by the full faith and credit of the United States. We've also identified a second governmental prerogative, and that is granting certain public benefits, and the public benefit here is deposit insurance. No one could contend that any citizen has a private right to have their bank, a bank owner, a private citizen owns a bank, to have that bank receive federal deposit insurance from the government. That can only happen if the government grants it. And as the Supreme Court held in a similar context in Thomas v. Union Carbide, that case involved the circumstance where the EPA granted licenses to sell pesticides. You couldn't sell them without them. And the Supreme Court said that there you have the governmental prerogative of safeguarding public health, and you have the distinctive area of licensing for pesticides. But critically, because it was a grant, what the Supreme Court held in Union Carbide is that the government, Congress, in drafting the statute, could condition the receipt of that government benefit, a pesticide license, on compliance with agency proceedings, including there having disputes between parties about how much they should be compensated for data they provided to the EPA, determined by binding arbitration in the first instance. Similarly here, in order to receive federal deposit insurance, Section 1818I requires parties who receive that insurance to have claims against them for misconduct that can be in the deposit insurance fund adjudicated in the first instance, in the first instance only, by the administrative proceedings provided in Section 1818I, putting off any judicial review of their constitutional claims until they would come, for example, here before the Fifth Circuit Court of Appeals. Secondly, FDIC enforcement claims have never been adjudicated in a court. But on the other hand, SEC claims historically always have been. So in jarcosy, because the Supreme Court defined public rights as matters that could only be historically adjudicated exclusively by the executive or legislative branches, the SEC's claim fell out of the first step. Third, the Supreme Court pointed out in jarcosy that the SEC involved regulating transactions between private individuals in a pre-existing market. What we have here, of course, is very different. What we have here is an enforcement system that's designed to protect public funds for a deposit insurance program that is created and administered by the federal government. And fourth, and importantly, unlike the SEC in jarcosy, which had the option to either proceed against a respondent with a securities fraud claim in an agency proceeding or in a federal district court in the first instance, at its option, the FDIC has been authorized by Congress to proceed only in administrative proceedings. And what this means is that if a court were to hold that the FDIC's program is improper because it doesn't provide a jury trial, the FDIC would have no ability to enforce the securities laws, its enforcement regime, and the Section 1818 scheme would, in the words of the Grant Financier Court, be dismantled. So these factors all weigh against there being a jury trial here. Just quickly as my time is running down, I want to point out that the differing results in Aiken, jarcosy, this Court's recent AT&T versus FCC case, and the millennia housing case we submitted from the Northern District of Ohio, which says that the HUD scheme, like the FDIC scheme, does not require a jury trial, is that in each instance you have the same analysis applied, but to a different regulatory regime, different statute, and different claims, and that's why it leads to different results. And I see that my time is coming to an end, and unless the Court has further questions. Thank you. You have reserved two minutes, I believe, for rebuttal. Yes, I've reserved two minutes for rebuttal, Your Honor. Thank you. May it please the Court, Ben Snyder on behalf of Eppley and cross-appellant Campbell Burgess, who's here in the courtroom with his father. Last spring, the Supreme Court confirmed in jarcosy that when the federal government brings common law claims against a private party, the Seventh Amendment and Article III almost invariably require that those claims be presented before a jury of ordinary citizens in a proceeding overseen by a tenure-protected federal judge. Jarcosy makes the merits of this case straightforward. The FDIC concedes that it is pursuing common law claims against Mr. Burgess, and while it argues that those claims come within the so-called public rights exception to Article III, that argument is impossible to reconcile with the Supreme Court's decision. The FDIC identifies no founding-era tradition of allowing executive branch officers to resolve this type of claim themselves, and it is seeking to impose punitive sanctions on Mr. Burgess, not simply to recoup public benefits that Congress could have chosen to withhold in the first place. So given its impossible task on the merits, the government has chosen to focus instead on jurisdiction. It argues that even if the FDIC proceedings do violate Mr. Burgess's constitutional rights, the courts are powerless to stop them. That's an argument that the FDIC is ultimately just as wrong as their merits position. As this court explained in Collins, Section 1331 presumptively supplies jurisdiction over constitutional challenges unless some other jurisdiction-stripping statute explicitly precludes constitutional claims. Because the statute that the government relies on here, Section 1818I, does not do so, the district court had jurisdiction to hear our case. The FDIC's contrary argument rests on this court's decision in Bank of Louisiana. But in footnote 10 of Bank of Louisiana, the court explained that it was not deciding whether Section 1818 explicitly withdrew jurisdiction over the claims before it, but was instead relying on its conclusion that Congress had implicitly withdrawn jurisdiction. The government has abandoned— How does that square with the Leda Ambon case?  So I would say two things to that, Your Honor. The first is that I think you can read the Ambon decision in Cochran not to interpret Bank of Louisiana as an implicit jurisdiction-stripping case, but instead as an explicit jurisdiction-stripping case. Now I will acknowledge that if you look at that paragraph in Cochran in isolation, it really does sound like the court there is treating it as an explicit jurisdiction-stripping case. But I want to sort of spell out why I don't think you have to read it that way. The second part of my answer is that even if you understand the Cochran-Ambon decision to have stated that Bank of Louisiana was an explicit jurisdiction-stripping case, that wasn't essential to the court's decision there. And even the Motes case, which my friend recognized, came out the other way than our district court on the explicit jurisdiction-stripping. The Motes district court recognized that Cochran didn't have a square holding on this, that its treatment of Bank of Louisiana was just dictum. So let me come back, if I could, to why I don't think you have to read that paragraph in Cochran as holding that Bank of Louisiana was an explicit jurisdiction-stripping case. I'd start with Bank of Louisiana, because in footnote 10 of Bank of Louisiana, the court there said just with complete clarity that it was not an explicit jurisdiction-stripping case. The footnote 10 says, although unclear, the FDIC may effectively be arguing that Section 1818I explicitly limits the jurisdiction conferred on federal district courts by statutes like Section 1331. And then it noted that there was some reason to doubt that. And then it says, in any event, we need not resolve that issue because of our holding that the statutory scheme withdraws district court jurisdiction implicitly. So Bank of Louisiana was completely clear that it was an implicit jurisdiction-stripping case. And given that, I think you look at Cochran, and I think the way to interpret that language is that Cochran was talking about the first step of the implicit jurisdiction-stripping analysis. And I recognize that this gets confusing, but the first step of the implicit jurisdiction-stripping analysis looks to the explicit text of the statute. So given how clear Bank of Louisiana was, I think the court should sort of give the en banc court the benefit of the doubt and say that the en banc court's decision to bank Louisiana was consistent with footnote 10 in Bank of Louisiana, and that it was just describing the first step of that explicit jurisdiction-stripping analysis. Well, is it your position that this panel can overrule Bank of Louisiana? No, Your Honor. We're not suggesting that the court needs to overrule Bank of Louisiana. Or Cochran? No. We're not suggesting that the court can overrule either of those. But I think the advantage of our position is that our position makes sense of Bank of Louisiana, Cochran, and Collins. It lines all three of those decisions up, and it allows this panel to treat all three of those decisions as correctly decided in the context in which they arose. So Bank of Louisiana, as footnote 10 indicates, as I just suggested, was a case about implicit jurisdiction-stripping, and it focused on non-structural claims. Now, after Axon, the FDIC has abandoned any implicit jurisdiction-stripping argument about the structural constitutional claims that we're raising here. But if you understand Bank of Louisiana as an implicit jurisdiction-stripping case, it's completely consistent with the position we're taking here. If you understand Cochran in the way that we're suggesting, it doesn't require you to disregard that footnote in Bank of Louisiana, and it also doesn't require you to treat Collins as wrongly decided, because Collins, of course, says that Section 1818 does not strip jurisdiction over constitutional claims. The government's contrary argument requires you to disregard this footnote in Bank of Louisiana, and it also requires you to treat Collins as wrongly decided. And I think, given that we're offering the court a path to reconcile all three of those decisions, I think the court should take that path. That's the ordinary course that a panel tries to follow when it's presented with precedents that may seem difficult to reconcile. You try to find a way to put all three of those decisions together. I want to turn, if I could, to my friend's attempt to reconcile their position with the fact that they've said in their briefing that they just think Collins is wrongly decided, but today my friend tried to suggest that Collins is different, because in Collins, finding that Section 1818 or the FHFA statute at issue there would have precluded all constitutional review, whereas they're saying here there's a possibility for review after the fact. And I think that argument falls apart after the Supreme Court's decision in Axon, because what the Supreme Court said in Axon was that for the narrow class of structural constitutional claims like these, where the challenger's argument is that he would be subjected to an unconstitutional agency proceeding, that subjecting him to that agency proceeding would impose a here-and-now injury, and that that injury may be, quote, this is quoting from the Supreme Court in Axon, impossible to remedy once the proceeding is over. And so in Axon, the court recognized that for the type of structural constitutional claim we're asserting here, requiring the challenger to wait until after the proceedings are over would be the deprivation of any meaningful review. And so we think it is entirely appropriate to apply the Webster standard here, the standard— How do you square that with Justice Gorsuch's concurrence in that case? So I think if you—so honestly, when I read that in the government's brief, I was concerned about Justice Gorsuch's concurrence. And then I went and read his concurrence. He says nothing at all about structural constitutional claims. He does not say that Section 1818 I strips jurisdiction over structural constitutional claims. The government's argument there is just that Axon was about structural constitutional claims, and so Justice Gorsuch's statement about 1818 I must also have been about structural constitutional claims. But if you look, he just offers it as an example of the type of statute in which Congress explicitly withdraws jurisdiction. We acknowledge that Section 1818 I withdraws jurisdiction with respect to some claims, but it doesn't say anything about constitutional claims. We think that, again, is a really important difference because for the narrow type of constitutional claim that we're attempting to assert here, if we're required to put that off until after the proceedings are over, it may be impossible to remedy that. And so Webster applies, and as this Court explained in Collins, if you're applying the Webster standard, Section 1818 I clearly doesn't preclude jurisdiction over constitutional claims. I think my friend has not disputed that. So if you agree with us that after Axon, the Supreme Court has clarified that for constitutional claims like this one, requiring us to wait until after the proceedings are over would potentially deprive us of any meaningful judicial review, then I think it follows that there's no preclusion of the particular type of claim at issue here. I'm happy to address further questions on the jurisdictional issue, but if the Court doesn't have further questions on that, I'll turn to the merits of the jargonsy issue. Again, as I said at the outset, I think jargonsy really makes that issue pretty straightforward, but I want to try and walk through the arguments that the government has tried to put forward in an attempt to, I would call it circumvent, I'm sure they'd use a different word, jargonsy. The first argument they've made is they've tried to suggest that this Court's decision in Aiken squarely controls here and that it wasn't overruled by jargonsy. We have two responses to that. The first is that we just don't think Aiken applies here. And the second is that if you were to read Aiken so broadly as to apply here, then we do think it would be squarely overruled by jargonsy. So let me take those in order. As to the first point, Aiken did not involve claims by the FDIC under Section 1818I for legal relief. Aiken involved claims by the Office of Thrift Supervision under Section 1818B seeking equitable relief. And that's not just some inconsequential decision between, or distinction between this case and that one. The Court in Aiken focused on that distinction. The Court in Aiken addressed the challenger's argument that the claims before it were effectively claims for legal relief, and it rejected those claims. And then when it got to the public rights discussion at the end of the opinion, it said that because it had rejected those claims, because the claims were not legal claims, he didn't have a Seventh Amendment argument that the claims had to be heard by a federal court with a federal jury instead of before an agency proceeding. But in this case, the government has conceded that the claims at issue are legal claims. They have conceded that the relief they are seeking is legal relief of the sort that the founders would have expected to only be awarded in a common law court, not by an executive branch agency. And they haven't disputed that the substance of the claim is closely analogous to claims for negligence or breach of fiduciary duty, which, again, were heard in common law courts. And so this idea that Aiken dealing with equitable claims somehow controls the decision here where you're dealing with legal claims just doesn't hold up. But if you were to read Aiken to say that the public rights doctrine applies not only when Congress creates statutory rights that are not legal in nature, which was the sort of relief at issue in Atlas Roofing that the Court was discussing in Grand Anciera, but also that the public rights doctrine applies when Congress takes a common law cause of action and relabels it and puts it in an administrative agency, then that would be clearly inconsistent with jarcossy. And the best portion of the opinion to look for on that point is the Court's discussion of Atlas Roofing, which was decided around the time of the Aiken's decision or somewhat before the Aiken's decision, and I think sort of influences the thinking in Aiken's. And the Court was very careful to narrow the Atlas Roofing decision and make clear that it was inconsistent with legal traditions and that it shouldn't be applied more broadly. So I think what the FDIC is really asking you to do is to extend Aiken in this circuit in the same way that the Supreme Court refused to extend Atlas Roofing when it was considering that issue in jarcossy. Now, if you get past the Aiken issue, the government has argued a handful of additional attempted distinctions between this case and jarcossy. The first one that they've identified is that this case implicates public funds. I think there are a few problems with that. The first is that in the administrative adjudication at issue here, they expressly argued that they didn't need to show any connection to public funds. They argued that there was no requirement that they show that public funds were ever at risk. And I think they essentially acknowledged that they couldn't make that showing, because even if all of the allegations at issue here were accurate, and we of course dispute that, but even if they were, it never placed the bank in any jeopardy. There was never any risk of drawing on the federal funds. But the other problem with their argument about the risk to the federal funds is that in Section 1821, which is that provision allowing the FDIC to sue as a receiver or conservator for banks that really are failing, Congress has said that claims very much like this one can be heard in federal court by federal juries. So those are the cases where you would think that if concern about the public fisc were really a reason to put things in the agency instead of having them heard before a federal court, Congress would have chosen to put those before the agency. But instead, Congress said juries are completely capable of dealing with these types of claims that have historically been heard by juries, even when there's a risk to the public fisc in the back end. And so I don't understand how the government can argue that the potential implications for the federal fisc require that all of these claims be heard before the agency when Congress has made the opposite decision. Now the FDIC makes an additional argument related to that one, which is that the FDIC has never had the authority to bring these claims in federal court. They say that that distinguishes them from the SEC, which could sue in either federal court or could proceed before the SEC itself. And again, there are a couple of problems with that argument. The first is that, as I just mentioned, the FDIC can bring claims very similar to these in federal court. So this idea that they can't proceed in federal court at all just isn't accurate. But the more important problem with their argument, I think, is that nothing in jarcossi suggests that the SEC case would have come out differently if the SEC didn't have the authority to proceed in federal court. And the implication of the FDIC's argument here is that Congress could effectively overrule jarcossi by taking away the SEC's authority to proceed in federal court. The implication here is that if Congress took away that authority to proceed in federal court, then it could decide, OK, SEC adjudications are perfectly fine. And I think that's just a fanciful suggestion. And there's nothing in jarcossi that begins to support that. The third distinction that the FDIC has offered is their suggestion that this case is really about private transactions. Or excuse me, it's not about private transactions, but it's instead about a government regulator seeking to control conduct in a particular area. Again, the problem with that is that the government made a very similar argument in jarcossi. The government in jarcossi said that this isn't actually about the individual private transactions that were at issue there. Instead, it's the SEC as government regulator seeking to regulate this market. And the court rejected that. And it said the underlying conduct at issue here is transactions between two private parties of the sort that would have been handled in suits at common law. And the fact that someone else is bringing the suit, the fact that the government is bringing the suit, doesn't change that outcome. The same is true here. The FDIC's claims here, they rest on alleged violations of a fiduciary duty owed by Mr. Burgess to Herring Bank. It is a private relationship that is at issue here, not some public relationship that might somehow be different. So this case is, in that respect as well, on all fours with jarcossi. Is it your position that the provision in 1818 I-1 that no court shall have jurisdiction to effect by injunction or otherwise the issuance of enforcement of any notice or order under this section, that the exception of 1818 applies? So yes, we think there is an exception to 1818 that does not apply to constitutional claims like ours, of the sort that couldn't be meaningfully reviewed after the fact. I do want to address an answer that my friend gave in response to a question from you about how other courts have addressed this. I think my friend was very careful to talk about this distinction between structural constitutional claims and other types of constitutional claims. But if you look at some of the other court of appeals decisions that have focused on 1818 I, and these haven't featured in the briefing in our case, but I think they are cited in the briefs in the Motes case. Was the opinion in Bank of Louisiana consistent with that position? So yes, Bank of Louisiana is consistent with that because the Bank of Louisiana decision, again, was an implicit jurisdiction stripping case, as the court said very clearly in footnote 10 of that decision. And the FDIC has abandoned any reliance on the implicit jurisdiction stripping after Axon for the reasons I identified. The cases I was thinking of were the Abercrombie case in the Seventh Circuit and the Ritter case in the D.C. Circuit. Those cases aren't on all fours with this. I'm not suggesting that they would dictate an outcome in a case like this one. But in those cases, other courts of appeals have recognized that Section 1818 I doesn't have to be read to preclude every possible claim. I think they've left open the possibility of claims where the agency is acting clearly in excess of statutory authority, for example. And the type of claim that we're asserting here, the structural constitutional claim that the agency is exceeding its authority, we think that sort of serves the same purpose and fits with the Webster analysis in the same way. The last thing I want to address, unless the court has other questions, goes to the question at issue in our cross appeal of whether the requirement to establish additional harm applies when what we're seeking is to prevent a future constitutional violation. I think the answer to that question is clearly no. Footnote 16 of this court's Collins decision, or excuse me, Cochran decision, said that that requirement doesn't apply when all the party is seeking is an adjudication that is untainted by separation of powers violations. And that's precisely what we're seeking here. I would ask the court to affirm. With respect to whether Cochran is abiding holding, I would direct the court's attention to this court's decision in United States v. Adamson. It's cited in our supplemental reply brief. Footnote 19 in particular, as this court explained there, if a decision in one way supports reversal, it's a holding. If that same decision is instead made the other way under the same circumstances, it's a holding. This court in Cochran had to distinguish Bank of Louisiana to decide the case the way it did. And it first asked whether there was a separation of powers challenge in Bank of Louisiana like there was in Cochran, because of course, if there weren't, that would have ended the court's inquiry, that would have distinguished the cases, that would have been a holding. With respect to the reliance on Axon's discussion about what's appropriate, Axon is an implicit jurisdiction case. As the Supreme Court itself made clear at the beginning, a explicit jurisdiction case is analyzed entirely differently. With respect to Aiken controlling on the jury trial issue, my friend says it matters whether the claims are legal or equitable. It does not. It matters when you're trying to determine whether the Seventh Circuit is implicated, but the public rights doctrine is an exception to Article III jurisdiction, which includes legal, equitable, and admiralty jurisdiction. Therefore, if the claim under 1818 in Aiken fell within the public rights doctrine, it matters not for application of that doctrine here whether the claim in Aiken was legal, equitable, or admiralty, and it was legal anyway as argued by the appellant in that case. We would ask the court to vacate the preliminary injunction and remand this case with instructions to dismiss for lack of subject matter jurisdiction. Thank you. Your argument has been submitted. Thank you, Your Honor.